UNITED STATES *v.* AH TOY.

*(District Court, D. Washington, N. D.* August 20, 1891.)

DEPORTATION OF CHINESE LABORERS—UNLAWFUL IMPRISONMENT.

A Chinese laborer having left the United States for a visit to China, and being by Act Cong. Oct. 1, 1888, (25 St. 504,) prohibited from returning, who nevertheless did return unlawfully via British Columbia, having spent one year as a mere sojourner in that country, and who, upon his arrival in this country, was arrested, and by a United States commissioner sentenced to be deported to British Columbia, and who, being without means to pay the $50 head-tax exacted by the laws of Canada of persons of his class on entering that country, and for that reason debarred from returning to British Columbia, the court, on application of the United States attorney, vacated said sentence, and issued a new writ of deportation to China, for the reasons that the commissioner's order is impossible of execution, and effective only to detain and imprison the defendant in this country unlawfully; and China is the country from whence he came, within the meaning of the act of congress providing for the deportation of Chinese persons found to be not lawfully entitled to remain in the United States.

*(Syllabus by the Court.)*

At Law.

*P. H. Winston*, U. S. Atty.
*W. H. White*, for defendant.

HANFORD, J. Ah Toy, a Chinese person of the laboring class, but a man of a roving nature, after having spent several years in the United States, during which time he lived in California, Florida, New York, Montana, and in this city, returned as a visitor to his native land, and while there the latest exclusion act[1] was passed by congress, whereby he was prevented from again coming to this country lawfully. He determined to come, however, notwithstanding the legal obstacles, and in the attempt was captured in this city at the end of a clandestine voyage from Victoria hither. He came from China to Victoria nearly one year ago,

---

[1] Act Cong. Oct. 1, 1888, prohibits any Chinese laborer who had been, or was then, or might hereafter be a resident within the United States, and who had departed or might depart therefrom, to return to or remain in the United States, and provided that, if such person return, he shall be removed to the "country from whence he came."

and, while waiting for an opportunity to make his way into the United States, he worked in Victoria as a laundryman for wages during a portion of the time, but was not constantly employed. After an examination before a United States commissioner, he was ordered to be deported to British Columbia; that being, in the estimation of the commissioner, the country from whence he came. The marshal is unable to execute this writ without paying to the authorities of that country a head tax of $50 exacted by law of all Chinese laborers entering the dominion of Canada; the defendant having failed to obtain, before leaving Victoria, a certificate entitling him to return without payment of the tax. The defendant is without means to pay the tax, and the marshal cannot pay it for the reason that the paying of tribute to the Canadian government in such manner by the government of the United States is not authorized by law, and for obvious reasons would be highly improper. Therefore, in the peculiar situation of this case, the writ issued by the commissioner, although it reads as a command to remove the defendant from the United States, operates to detain him; for while it remains in force he cannot be permitted to go at large, and it is impossible for the marshal to execute the writ. The United States attorney, regarding the writ as void because impossible of execution, has made application to have it quashed, in order that a new proceeding may be instituted to obtain a writ for the deportation of the defendant to China, and thus relieve him from perpetual incarceration.

It is not my understanding of the exclusion act that if Chinese laborers come into the United States from China via Canada, Mexico, or any other country, even though they may sojourn for a time in such country, they can claim, by reason of such interruption of their passage, such country to be the country from whence they came, without having gained a foothold or established relations of a permanent character in such country, or acquired a right under the laws of such country to freely return after a departure therefrom. As this defendant is not entitled, under the laws of Canada, to return to that country, his case is distinguishable from the *Case of Leo Hem Bow*, 47 Fed. Rep. 302, in which I have given an opinion to the effect that, within the meaning of the exclusion act, British Columbia is the country to which he should be removed.

I regard the detaining of a Chinaman in an American prison without legal process authorizing such imprisonment as being not only cruel, but unlawful, and to avoid such cruelty and breach of law in this case I will, as a matter of necessity, assume the power to vacate the judgment of the commissioner, and set aside the writ of deportation, and will issue a new writ commanding the marshal to remove the defendant from the United States to the empire of China, which, from the evidence, I find to be the country from whence this defendant came.